## COMMONWEALTH *vs.* INHABITANTS OF DRACUT.

No action lies by the Commonwealth against the town of a pauper's settlement for the expenses of his support at one of the state almshouses before the *St.* of 1855, *c.* 445, took effect.

The Commonwealth cannot recover of a town, under *St.* 1855, *c.* 445, § 4, the expenses of supporting a pauper at a state almshouse more than three months next before notice thereof to the town.

The *St.* of 1855, *c.* 445, giving a remedy to the Commonwealth against towns for the support of " any pauper who shall become an inmate of the state almshouses," includes the support, since that statute took effect, of paupers who became inmates of one of the state almshouses before.

All objections to the sufficiency of a notice to charge a town with the support of a pauper are waived by returning an answer denying all liability on the ground that the pauper has no settlement in the town.

Misjoinder of causes of action in the same count can be raised by demurrer only.

The omission of an allegation of notice can be availed of by demurrer only.

ACTION OF CONTRACT to recover expenses incurred for the support, as paupers, of the wife and three children of Henry Goodhue, who was admitted to have had his settlement in Dracut. Writ dated April 8th 1856.

The declaration contained four counts, each of. which alleged that one of said four persons was a pauper, having his or her legal settlement in Dracut, " and became an inmate of the state almshouses at Monson and at Tewksbury in said commonwealth, in distress, and in need of immediate relief; and th plaintiff provided for the immediate comfort and relief of said pauper at said almshouses, of all which the defendants had due notice, and thereby became liable to pay the expenses incurred by the plaintiff for said pauper at said almshouses."

The answer declared the defendants' ignorance whether these persons were paupers and in distress and in need of immediate

relief, and became inmates of said state almshouses, and whether the Commonwealth provided for their immediate comfort and relief at said almshouses; and denied their settlement in Dracut; and denied that the defendants ever had notice that they were paupers, or were in distress and in need of immediate relief, or were ever inmates of said almshouses or either of them, or that the Commonwealth provided for their comfort and relief; and denied that the defendants ever owed or became liable to pay the expenses, or any part thereof, incurred by the Commonwealth.

At the trial in this court, at May term 1857, before *Metcalf*, J., the main fact in dispute was the marriage of Henry Goodhue to his alleged wife, which was submitted to the jury, who found in favor of the marriage.

The Commonwealth claimed the right to recover the expenses incurred before the 21st of May 1855 at common law; and those incurred since, under the *St.* of 1855, *c.* 445.

The only notice that was proved was a notice signed " by order of the inspectors of the state pauper school at Monson," by their clerk, dated September 27th 1855, and addressed to the overseers of the poor of Dracut, informing them that these paupers, who had their settlement in Dracut, had fallen into distress, and were now inmates of the state almshouse at Monson, where they were supported at the expense of the Commonwealth; requesting them to remove the paupers; and notifying them that until such removal the town of Dracut would be held liable for the support of the paupers. . This notice was received on the 29th of September, and an answer returned, denying all liability, upon the ground that the paupers had not their settlement in Dracut. The defendants objected, at the trial, to the ufficiency of the notice.

They also objected to the sufficiency of the declaration, because claims for expenses at two distinct almshouses were joined in the same count; because claims under the statute and claims at common law were joined in 'the same count; and because there was no averment that notice was given within three months after the expenditures.

The case was reserved for the determination of the full court upon a report, the substance of which is stated above.

*H. L. Dawes,* for the Commonwealth.

*I. Sumner,* for the defendants.

METCALF, J. If the defendants are liable to the Commonwealth in this action, it is solely by virtue of *St.* 1855, *c.* 445. They are not liable by the common law, nor by any previou statute. The provision of the fourth section of said *St.* of 1855 is this: " If any pauper, having a legal settlement in any city or town in this commonwealth, shall become an inmate of the state almshouses, such city or town shall be liable to the Commonwealth for the expense incurred for such pauper, at such almshouse, in like manner as one town is liable to another town in like cases; and the same measures shall be adopted by the inspectors of the state almshouses respectively, in regard to notifying towns so liable, the removal of such pauper, and the recovery from towns of expenses incurred for such pauper at the almshouses, as are prescribed for towns in like cases." This statute took effect on the 21st of May 1855, and its provisions are wholly prospective. The defendants are liable, therefore, only for expense incurred in support of the paupers after the passing of the statute, and within three months next before notice given to them, by the inspectors of the almshouse, that the paupers were there supported. Rev. Sts. *c.* 46, § 13. *Cummington* v. *Wareham,* 9 Cush. 585. That notice was given on the 27th of September 1855, and made the defendants liable for the expense incurred for the paupers, from June 27th 1855 to the date of the writ; but not for the expense previously incurred.

The section of the statute, on which this action is founded, mentions only such paupers as " shall become " inmates of state almshouses ; and it has been suggested, but not urged, in behalf of the defendants, that the action cannot be maintained, because these paupers were inmates of an almshouse at the time when the statute was passed. But this suggestion is readily answered by the long established rule of construing statutes according to the manifest intent of the legislature, though apt words to express that intent may not be used, or though such construction

may not accord with the letter of the statute. Dwarris on Statutes, *c.* 12. Now the intention of the legislature manifestly was, to relieve the Commonwealth from the burden of support-ing town paupers in the state almshouses, which were estab-lished for the support of state paupers only. It was found that paupers who had a settlement in the Commonwealth were sen to these almshouses ; and it was the purpose of the legislature, by the statute in question, to give to the Commonwealth such remedy against the towns where such paupers had their settle-ment, as a town where they had not a settlement, but which had supported them, would have. It was an evil already existing, which the statute was meant to remedy, and not merely an evil that was anticipated. For the past expense of supporting town paupers, the legislature did not (probably could not, in cases where there was no fraud) demand an indemnity from the towns ; but for the expense of their support after the passing of the statute, the means of indemnity were provided, as well for those paupers who were already inmates of state almshouses, as for those that afterwards should become such. The words " shall become an inmate " must have the meaning of " shall be an inmate." So the words " inmate of the state almshouses " must have the meaning of " inmate of a state almshouse ; " otherwise, it would be necessary that a town pauper should be an inmate of more than one state almshouse before the Com-monwealth could recover an indemnity from the town in which he had a settlement.

A question was raised by the defendants as to the sufficiency of the notice received from the inspectors of the almshouse. We have not considered this question ; being of opinion that all objections to the notice were waived by the answer thereto, which was returned by the defendants. *Northfield* v. *Taunton,* 4 Met. 433. *York* v. *Penobscot,* 2 Greenl. 1.

Nor have we considered the objections to the declaration ; because the defendants did not demur to it, but answered to the merits of the action. *Judgment for the Commonwealth.*